First matters of Valdes v. State of New Jersey Good morning. My name is David Haldeman. I call from Haldeman, Greensburg. I'd like to ask you a question. Okay. Let me ask you this. Why hasn't your client waived the Title VII claim? Not the retaliation claim, but the Title VII claim and the fair exercise claim. He signed an agreement saying that he would abide by the regulation to have a beard that was not longer than one-eighth of an inch. Because I don't know how you measure a beard. I don't know if you measure each hair individually and take the average. I don't know how you do that. However factually, they worked that out. He signed an agreement to do that, and then he didn't do that. But why hasn't he waived whatever claim he had to the argument that the regulation in and of itself is a free speech violation? Thank you, Your Honor. He has not waived it because he did not sign any waiver. He signed no relief. He simply agreed that the purpose of entering the training academy is to keep the beard to one-eighth of an inch. He did not agree that was constitutional. He did not agree that that was an important part of the Title VII. He simply agreed to it to be an entrance to the training academy. It is a really standard black-letter law that in order to waive a constitutional right or a claim on the Title VII, the waiver has to be non-involuntary. There was no such non-involuntary waiver. There was no document that he acknowledged that he waived it. But he certainly stated affirmatively that he understood and would abide by the accommodation of a one-eighth inch length beard, right? I mean, that's unambiguous in the record, isn't it? That is correct. That's a good point. And he also says plainly in his deposition that on his very first day he was out of compliance with that, right? Not quite, Your Honor. What he testified to in his deposition is that he was told by the division on the Civil Rights that as long as his beard was neat and thin, that no one was to rule it to his face. Well, I'm asking whether he said in his deposition, your beard was longer than an eighth of an inch on the first day, and he said yes. That is correct. And he signed a document that said, my beard will be an eighth of an inch no more. I mean, that's clear in the record, too. I understand you're saying he understood that to mean something different than an eighth of an inch, but what he signed said eighth of an inch, right? Okay. And there's some dispute in the record, I guess, but maybe you can help me understand this. At least two or three other occasions his beard was in excess of that length? That's where there's an issue of factorial. There was a difference in understanding what an eighth of an inch meant. Whether it meant one day's growth, or whether it meant an eighth of an inch instead of being married to the ruler. Well, an eighth of an inch, to me, I'm simple. An eighth of an inch means if you have an inch and you rack it up into eight equal portions, each one of those is an eighth of an inch. And the best way to check that was to go to the razor setting. And he offered to shave with his razor setting in front of Sergeant Willie. He said, I'm not going to look at your razor. Instead, Sergeant Willie tried to put a ruler to his face, or instructed another instructor to put a ruler to his face. And the back of the defendant's tongue, they said, should not happen. Is your problem the restriction, or is it the length of the beard? Or the method of enforcement. It's all of the above, actually. The state grants an exemption to the no facial hair policy. Could you outline precisely what you contend is the burden on free exercise? What the burden is on his right to exercise his faith or religion? His understanding of Hinduism, that he required that to shave. As far as that's concerned. From having to shave his beard, completely, down to the eighth of an inch, down to any other violation of free exercise. He didn't request an accommodation to allow for his beard to be longer than the eighth of an inch. They simply said that he could have an eighth of an inch, whether it's a day's growth, or however they decided they were going to determine whether or not a beard is an eighth of an inch. And he agreed to that. He didn't say, well, wait a minute. That's inconsistent with my religious beliefs. I'm not supposed to shave or trim. I've just got to let it grow. He didn't ask for an accommodation to allow it to be longer than an eighth of an inch. That's correct. If you were to prevail in this case, the regular officers, not the trainees, would come within the ruling, wouldn't they? In other words, they can grow their beards as long as they'd like. That's correct. That's correct. There's a policy which says they can grow their beards one quarter of an inch, and must actually. There's actually an exception to that policy, medical and religious. But if you're right here, then that would affect the restriction involving the regular officers as well. It depends on whether he's entitled to, he should have been given the same one quarter of an inch exemption, or whether a Muslim person. Is that what he's asking for, a quarter of an inch exemption? He's asking for, he should have been given at the very least the same. How would that help him? If he's saying that he should have been given the quarter of an inch exemption, and that would have satisfied his religious problem, how would that help him? Is there something in the crime that says that the beard ceases to grow after a quarter of an inch? How would that help him? No, it would help him in the sense that he'd be treated equally. He's treated equally as it is, right? Because you say it should be what the correction officers have, but he's not a corrections officer. At this point, he's a trainee, and the regulation says that all trainees are to be clean shaven, period. It doesn't say anything about any exemption for anybody. How is he being treated differently from any other non-correction officer trainee, which is what he is at the point in time we're talking about, right? That's correct. Okay, so where's your basis for saying he's being treated unequally? He's being treated unequally as compared to the whole universe of people who have First Amendment rights, whether it's corrections officers or trainees. Even if Adam Conway admitted, he'd look at the policy on corrections officers to determine what he should do with the appellant. Isn't it fairer to compare him with other corrections officers? I think it's too limited. I think he has the same First Amendment rights as two corrections officers. There's no principal distinction. Well, what's your distinction? How can you say that? If you're not an employee and you're not a correction officer and you're in a training program, how can you say you're the same as somebody who is a corrections officer? I mean, where's the logical end to that? How come you don't say, well, he's the same as a police officer as well as a correction officer, or he's the same as a civil servant? He's working for the state. Or he's the same as anybody who lives in the state of New Jersey because they all live in New Jersey. Where's the reason, distinction that you make that would prevent that logic from moving out? I think the principle here is that he has the same First Amendment rights in his capacity as a trainee or as a corrections officer. There's no demarcation between the two when it comes to First Amendment rights. And that's what I'm trying to get you to explain to me. I understand that's your assertion, but what's the logic for saying there's no demarcation? Are you asserting that there's no rational way that a state could look at trainees who are not yet employed as being different from officers who are employed? I think the state would have the burden of showing a compelling interest as to why you're going to treat a trainee differently. Well, I was going to ask you, why compelling interest? What is the law? What is the best case that would suggest that the appropriate test here is the compelling six-scrutiny test? I think the Blackhawk case, as well as the Kenneth Bly case, and also the Supreme Court case, all stand for the proposition that even if you have a facially lethal law, but when it allows for individualized and discretionary exemptions to that law, it creates the opportunity for what the Supreme Court called gratuitous restriction. Yeah, but that really isn't playing here, because the regulation on its face simply requires all trainees to be clean-shaven. They made an accommodation to him through which this exception arose, but the exception is not in the policy on its face. This is a policy of general – it's a neutral policy of general applicability. It applies to everybody who becomes a trainee. So why wouldn't it be the less onerous, reasonable standard test? So you're saying that they should not have made an accommodation to try to accommodate your client's interest, because the moment they try to accommodate your client, they're making an exception to a general rule, and therefore they're kicking themselves up into heightened scrutiny. It depends on the nature of the exemption. I mean, the nature of the exemption here left to the discretion of the particular individuals who are making the decision. Did it really? Now you say the nature of the exemption. In Blackhawk, there was an exemption provided for in the statute. That's why this court ruled as it did. This case is more like Tenafly. Isn't it? Aren't you – what you're really asserting is that even though the regulation here was neutral and generally applicable on its face, in practice they made an exception. That sounds like Tenafly to me, not Blackhawk. Do you understand what I'm asking? Well, Blackhawk, there's actually a provision in the statute that says there can be some individualized decision making. There's nothing like that in this regulation, right? It's on its face, neutral, generally applicable. If I understand your argument, you're saying, yeah, but in practice they made an exception for me, and therefore strict scrutiny applies. Okay. So that's Tenafly. That's what Tenafly says. It can be generally applicable on its face, but if, in fact, they're doing something different, then maybe strict scrutiny applies. But if that's true, if we're in the Tenafly zone, my recollection of Tenafly is that it says specifically that the issue about lack of neutrality comes up if exemption is made for some secularly motivated conduct, but not for comparably religiously motivated conduct. That's a quote from Tenafly. If you're making exemptions for secular conduct and not for religious conduct, then strict scrutiny would kick in. Here, the exemption that was being made was not for a secular purpose. It was specifically at your client's request for religious accommodation. So how do you fit under Tenafly if that's the rule at Tenafly? I think because when you're asking for a religious exemption, you're entitled to even more scrutiny for the exemption that's given. But in Tenafly it was reversed. They allowed exemptions but denied it for religious requests. They allowed it for political advertising, barbershop signs, advertising, everything. Lost dogs. But they denied requests based upon religion. Here you've got something which is a general rule applying to everybody in your client's class. But an exception was made at your client's request. I'm not saying that the exception that was made was based upon something your client expressly asked for, but it appears to be based upon an attempt to accommodate your client's religious needs. And I'm not certain. That seems even much less onerous than the Tenafly situation where on its face the record establishes religious discrimination. Here you've got, if anything, discrimination against secular beards because they're not allowed, whereas religious beards are allowed. Why isn't that an establishment problem? It's an establishment problem because the nature of the exemption that causes the establishment problem is a pre-exercise problem. But of course you haven't made an establishment claim, right? Oh, a pre-exercise claim. Right. Yeah, and in fact you couldn't because it would go the other way. Yeah. The length of the beard doesn't affect his religious belief, does it? It does. He believes that he's not supposed to shave his beard at all. So no accommodation would be fitting for him. Yeah. I mean, one-fourth of an inch, which is what the regular officers have, then would not make any difference in your analysis. Well, it's what the regular officers have, but they are allowed to ask for a greater than. Well, that means that the next issue that you raise is he shouldn't have an eighth of an inch or a quarter of an inch. He should be allowed to have a beard as long as he wishes. How old is he? I'm just wondering. What about the compelling arguments that are presented that the reason for the neat trimmed beard is for esprit de corps and so that officers can wear gas masks whenever or other types of masks when they're required to do so? I don't think the state has asserted, but in practice, the state did not hold or refer to those issues. The state never fitted him with a respiratory protection mask to determine whether he provided proper care to anyone. He had always one-fourth or one-eighth. During the training, apparently, it does not come up in the sense that he's not fitted with the mask. Well, were they to establish that the breathing apparatus would not work very well with a full beard, that would, in your view, establish a compelling interest? For the purposes of, yes, at the point during training when he's required to wear the mask. That would be the least restricted means here. If there's going to be a training session on a particular day where he's going to have to wear a respiratory mask, then he should have. If it's determined that the mask won't fit with anyone with a beard, he should have to shave his beard. But for the rest of the training, there's no reason for him to have to shave his beard, because respiratory protection is not in play. Now, to go back to your point, if I can characterize it correctly, all Muslims who are trainees should be allowed to have a beard as long as they want it to be. They don't have to shave. Is that accurate? Under the current training programs, I understand, yes, because they do not have to wear respiratory protection during the training program. So that the institution itself cannot treat trainees any differently than anyone else? That's what the First Amendment says. Let me ask a question about the Catch-22, which your position seemed to put the state in. If I understand your argument with respect to Title VII and the law, the assertion is that the state was required to make some accommodation for him. Is that right? That's correct. Okay. So you're saying it's by operation of statute, Title VII, the state has to make an accommodation for him. And then you're saying that giving him an accommodation necessarily means they are not entitled to the ordinary rational basis review. They are subject to strict scrutiny review. So by your logic, the state can never enjoy rational basis review. It will always face strict scrutiny when it comes to free exercise challenges. Is that right? My time's up, ma'am. I wish you would. I think it depends on how they grant exemptions to the policy. Well, your argument is they have to. Under Title VII, they have to give an accommodation. The state maintains an undue hardship. The statute does provide that. If the state could come forward and show an undue hardship, then they do not have to provide an accommodation. But in the event that our position, that in this case, they didn't even argue for an undue hardship, therefore they would have to satisfy the strict scrutiny standard. Let me put one more question. Go ahead. This is really in the form of a hypothetical. Now, the state has a training program that's 12 weeks long, and it's encouraging people of all faiths to apply and so forth. With regard to anyone who must wear a beard, the state says the beard cannot exceed one-eighth of an inch. Applicable to everybody. No individual treatment for anyone. That's the policy. Is there anything wrong with that? If it's a policy across the board, not individually determined, but a policy that applies to everyone. Does it also apply to corrections officers, or are they given a greater level of fear? Let's say it applies to everyone. It applies to everybody. Then I think it would be, I have to give it a little more thought, I think that might, it would certainly be neutral, and it would certainly be non-discretionary, so it would have to pass a lesser test. The rational basis test would be sufficient? I think so in that sense. All right. So your problem here is that there's a difference between the trainees and the regular officers who are allowed a one-quarter inch beard. It's a significant difference. And it undermines the policy across the board. Well, it's a difference. You reserve, I think, quite a bit of time for rebuttal. About five minutes. Thank you. Thank you. Good morning, gentlemen. Good morning. Marie Chow is going to be applying to the Department of Corrections. Pull the microphone up just a little bit. I'm sorry. First let me clarify some statements of fact that were made. Mr. Valdez did not, he was discharged in eight weeks of the training program. There's no indication that he was ever going to receive the respiratory training. In fact, all the testimony was that at some course in time during the training, every single trainee under state law under the police training academy regulations has to receive that training. That's part of the requirements. The training that they receive, they have to pass it in order to graduate from the academy. Are there any regulations involved in the use of the respiratory equipment concerning beards? Yes, Your Honor. Oh, absolutely. Could you bring us up to date on the current regulations? Yes, Your Honor. Or statutes. I think there may be a statute that impacts that also. There are OSHA standards. There are state of New Jersey PIOSH standards. P-O-S-H. And it's contained, those standards are set forth on the appendix, pages 436 and 408. Requires respirators shall not be worn when conditions prevent a good-faced seal. Such conditions may be the growth of the beard or sidelines. Also, if the PIOSH standard is conducted on an employer, an employee who's wearing a face mask is found to be in violation of the no facial hair requirement and there's no proper seal, the employer can be sanctioned by the State Department of Health and Human Services. Is there any relationship between the length of the beard and the ability to get a good seal out of the beard? Absolutely. Well, what is it? There should be no facial seal. No facial hair. No facial hair. But you allow it. You allow a quarter of an inch for some people. And that's wrong. Isn't that your regulation? I don't know if that's at present for the Department of Corrections. I don't know. In fact, the testimony and the record indicates that in light of this particular case, it was brought to the department's attention that they were in fact not in compliance with both federal and state laws and regulations regarding no facial hair. And as far as we know on the record, that policy was being re-evaluated to allow at most one-eighth of an inch. I don't know what the present record is. Why an eighth of an inch? If any facial hair prevents an adequate seal, why allow the eighth of an inch? What was researched by Mr. Conway when this issue was presented to him was he wanted to accommodate as well as he could and that was what he found could be the most growth that would allow a proper facial seal for this particular type of respirator mask that they used. He researched case law. He researched what the manufacturing required. He researched what the kiosk standards are. This is all on the record. He also called around to various other police departments, police training academies, different corrections officers, training academies, different academies throughout the state to find out exactly what they allowed. We're in the record. You say it's all in the record. We're in the record. On the appendix page 483, Mr. Conway testified that he had done legal research. He researched the OSHA regulations. He researched the manufacturer's specifications for the particular type of thing. He spoke with the chief of special operations from the Department of Corrections, and he also spoke with the city of Newark, their police department, and another police department to find out what they allowed, and they allowed one-eighth of an inch for their trainees. Is that now an across-the-board policy? Is it one-eighth inch for trainees? No, there's still no facial hair. However, this particular case, one other individual did ask for a logistics exemption in that muscle. This is also on the record. But it sounds like you're making individual assessments based on who is asking and when the request is made as opposed to having an across-the-board policy. There is an across-the-board policy, and there is the across-the-board policy is no facial hair. How do you get the exemptions? The exemption is when someone asks for it and specifies. There's never been a secular exemption granted. The only two exemptions that have been granted are Mr. Valdez being Muslim and one individual subsequent to him who was also a Muslim who adhered to the one-eighth inch policy. Mr. Valdez retired and graduated from the Academy of Social Sciences. But then those exemptions, is it fair to say that those exemptions are not based on a specific department policy but rather on an ad hoc basis? I wouldn't say there's no specific written policy. There's certainly a policy of asking and reviewing each individual case and releasing for the exemption. And regardless of whatever the exemption is, it has been requested whether it be medical. There has been no evidence that there's been any medical exemption requested. But for whatever reason, the only exemption that would ever be granted would be one-eighth of an inch. Because without endangering the health and safety of the individual trainee, that's the most that can possibly be allowed. There is no other reasonable accommodation for any request that's granted, whether it be secular or religious. It still sounds like they're subjective, individualized decisions, which might take it into the heightened scrutiny level. I don't think that's the case, Your Honor. And basically what you're saying is you're penalizing someone who's granting a religious exemption when, in fact, there's never been a secular exemption. Unlike all of the cases cited, particularly Blackfool and Ten-and-Fly, it was selective enforcement of the policy or the regulations, and the selective enforcement was in favor of secular exemptions for secular reasons. That's not the case here. In fact, it's the exact opposite. The people who got the beneficial treatment and the favoritism were for religious reasons. So you're penalizing now, which makes no sense, someone who's granting it for religious reasons, but not for a secular reason. But there's no evidence on the record that anyone for any secular reason has ever requested an exemption. So it's almost as if—excuse my mouth, Your Honor, and if you do, then you don't. If you didn't grant it, we'd still be here. If we did grant it, we're still here. It doesn't matter. We're still here. Because I think plaintiff's position is, plaintiff's health's position is, I should be entitled to grow my beard as long as I want and not shave it at all, despite the fact that I agreed to, before I entered the academy, to keep a 20-inch and on three specific occasions, I admittedly did not keep a 20, and then despite the fact that even after I was discharged, not to keep my beard, I feared a 20-inch. Hold on. There's some dispute, or your opponent says there's a dispute in the record about the number of times that he was out of compliance. Is he right that that's disputed, or is it admitted in the record? It's admitted in the record, Your Honor. In fact, on page 8443 of the record, on 11-17-03, Mr. Valdez, in his own handwriting, wrote, I didn't shave an eighth of an inch because I was told it didn't have to be exactly that. I will shave it to an eighth of an inch. On page 8460 of the record, in Mr. Valdez's own writing, he states, As for the beard, and this is on 12-3-03, now three weeks later, As for the beard being above an eighth of an inch, I was told by civil liberties officer that handled case that my beard will not be measured and can be a little off. So again, now that's two times he's found without his beard in excess of an eighth of an inch, admittedly, and tries to say, well, someone told me I didn't have to keep it that long. The third time admittedly, which is not disputed, is on 121-04. Mr. Valdez writes in his own handwriting on 84-73, I, Trenny Valdez, let my beard grow over one eighth of an inch. I took care of my beard after lunch. I had trouble finding the settings. Well, how many times... I'm sorry, I had what? I didn't hear what you said. I had what? I had trouble finding the settings. On the razor. On the razor. Well, I did. As it was stated before, he was specifically directed by his superior to say, You're in violation of the eighth of an inch. Go back to the barracks and shave it. And when I see you tomorrow morning, be in compliance. Well, guess what? The next morning he comes back and he's still not in compliance. And this is what he says. Well, I had trouble finding the settings on my razor. So if you had to shave again, despite being told to do so the day before, how many times are you going to let someone say, You know what? I don't really care about these rules. The rules don't mean anything to me. And a direct order from a superior doesn't mean anything to me. You said something interesting before about the regular officers who are now allowed, Muslim officers allowed a one-quarter inch beard. But you say that that is actually wrong. That is wrong. And that has to be changed. And I don't know if now today that's still the policy. I know at the time that this record was created, it was being reviewed because this case brought to light that a quarter of an inch was too long. Is there a policy in effect concerning officers being allowed, regular officers being allowed beards? I don't know the answer to that, and it's not on the record. I don't know. You want to answer your opponent's assertion that there should be no distinction between trainees and officers? There actually should be a distinction, and I think the case law, particularly Kelly v. Johnson in the 1976 Supreme Court case, actually says that the state really has wide latitude in creating any type of restrictive regulations on its employees, which, as a trainee, he's technically not even an employee. But in terms of the trainees, the regulations that they have are for a number of reasons. One is for a Supreme Court, which Kelly v. Johnson says is completely legitimate. The other are for health and safety reasons and for federal and state regulations regarding the facial mask requirements. I don't think, based upon the Kelly v. Johnson case, it's the appellant's burden to establish that there's no rational connection between the regulation of no facial hair and the state's practice of organizing the corrections department. They haven't established that burden. Judge, Jordan's question is really where I was going. I asked you about the quarter inch, and you say that's wrong, so it sounds like one-eighth of an inch is okay in that it's allowed to the trainees. So that everybody is going to be treated the same, it tends to undermine Mr. Valdez's case here today. Correct. Correct. I think at most, based upon the federal regulations, the state closure regulations, the manufacturer, they say you can't do it over an eighth of an inch. You're jeopardizing your own health and safety. Not over an eighth of an inch. Because he was saying in his briefs that I should be allowed the same length of beard as the regular officers. You should not be. The regular officers... Well, I understand. Yeah, but you're... But if that is wrong, and you say an eighth of an inch is okay, then both the trainees and the regular officers are going to be under the same regulation or restriction. Because there's no Kelly issue. Because the thing in Kelly that made a distinction which was okay was, on a rational basis, that's gone if the quarter of an inch is gone. I think I'm following where you're going. The state can say there's no facial hair at all, but if we're going to grant an exemption to anyone for whatever reason, at most it's going to be one-eighth of an inch. Well, for religious reasons. Or medical reasons. Correct. A lot of people have problems with... that relate to this topic. For shaving. I think that's one of the... For the regular corrections officers, they grant the exemption based upon medical reasons. Right. Anything else? No. Thank you. Thank you. Thank you. It might be a good idea if we could submit 28 J letters that you would agree to the representation that was just made by Miss... I hope I'm pronouncing this correctly. Chemith there, is that correct? Yes, sir. To stipulate to the fact that at least it's under review, the quarter of an inch policy. Now, Mr. Halsman, you had a disadvantage there because you can't effectively rely upon the other side. You can't really tell that it's under review unless they say it is. But it would be helpful in terms of this record. It gets that issue out of the case. It is? Okay. All right. Great. Thanks. Thanks a lot. I'm sorry. Can we start this clock back again to the beginning? Thank you, Mr. Halsman. Thank you. The fact that the policy may be under review, and the fact that Ms. Chemith has admitted that the state maintaining the policy which directly contradicts its proposed compelling interest in respiratory protection... Well, but it doesn't because what the state is saying is that based upon the request for an accommodation, if you want to put it in federal separate language, will allow facial hair. But in order to have that facial hair not jeopardize the safety of the trainee or corrections officer, and to be consistent with OSHA standards and the requirements for a respirator, we're going to limit that facial hair to one-eighth of an inch for everybody. Can it do that under the state's responsibility and training regimen for corrections officers? Well, the record says it does. I mean, we're told emphatically by your opponent that there is by law a mandate that they go through this respiratory training, and that had your client not been, in their view at least, insubordinate and stayed in the program, he'd have gone through the training too. Yeah, but in the real world, you can't wait. If a situation arises, the officer has to wear a respirator, and he says, oh, wait, I'll be right with you, but I've got to go find my razor, adjust it, and shave. It doesn't work that way. Why can't they simply have a regulation which takes into account the realistic possibility that they may have to wear respirators and require them to have facial hair which is consistent with that foreseeability, which is what they've done. But they'd still be in violation. If what you say is accurate, for the period of time the person has shaved, they're still violating their religious beliefs. So your view of the free exercise clause is that it gives individuals the power to dictate to the state when in a training program they will shave or not shave. Well, that's what I just heard you say, is that they don't have to shave until the day that they're going to have to wear that respiratory mask. Did I miss it? I'm just wondering if I misunderstood what you were saying. There's a fundamental reason for the training to be between shaving at all times. There would be no basis for the training to be between shaving during the course of the training other than when they need to wear the respiratory mask. The second prong of their justification is the esprit de corps, which Kelly did say is a sufficient justification for a restriction. That does not go to that part of their justification at all, that maintaining esprit de corps. I'm sorry. That's all I was going to say. Yes, Your Honor. And the testimony here from Defendant Lieutenant Kyle as well as Defendant Sergeant Willie, they both testified that facial hair actually doesn't affect esprit de corps. The standard of review room is very large here, and you're arguing for heightened scrutiny. Yes. But if everyone, the regular officers as well as the trainees, are pretty much in the same boat in terms of the beard, the same length, the same rights, there's no individual assessment of any kind. Doesn't that support the idea that it should be a rational relationship test? In fact, that's the policy. That's not the policy. The policy is that these kinds of approaches are still ad hoc, still discretionary. Well, no. But she said that a quarter inch, which is what your client is asking for, he wants his beard, he wants to be able to grow a beard up to a quarter of an inch. And she's saying that's wrong. It's been a wrong policy. And I suspect it probably would change based on what she said here today. If everyone can have a beard but no, well, who is entitled to have a beard for religious reasons, but no longer than an eighth of an inch, doesn't that support the rational relationship test rather than heightened scrutiny? I agree. If there were no discretion involved, everybody had an eighth of an inch. Well, when you say no discretion, we're not talking about your issues with discretion, and your issue, we're back to the trainees being treated differently from correction officers issue, right? I mean, that's the eighth of an inch difference on which this whole case hangs. Am I right? That's correct. Okay. Now, if I understood you a minute ago, you seem to be making an argument that indicates there is a reason, basis for distinguishing between trainees and corrections officers because if I got you right, you're saying they shouldn't have to shave their beard until in the training program they know they're going to put those respiratory masks on. But, of course, in the corrections field, for officers who are actually on the job, as Judge McKee indicated, you don't have the luxury of saying, hold that gas, I'm going to go shave, and then put your mask on. You've got to have yourself prepared at all times, right? That's correct. So, there are some distinctions between training and being on the job, which make those two things different classifications and could be viewed differently by the state for some purposes, right? Yes. And those distinctions actually... You could argue that they militate in favor of beards for trainees, but at least there's a distinction there that the state can look at and say, trainees are not correction officers, they're a different class of individual. Is that right? They could say that, if they didn't maintain the policy in which corrections officers are allowed to have beards, while they're in review, that's a different policy. Thank you. Thank you. I also want to, just in passing, compliment you, Mr. Hawthorne. Both comments were very good, but I was on the panel, NFOP versus City of Newark, where this issue came up with the police officers. You both briefed the case, I'm sure you're familiar with it. And the attorneys for the city justified the policy for having a beard by arguing vociferously while staring at me that it was a requirement that was legitimate because beards signified that the beard was unprofessional and unclean. And he made that argument for 15 minutes. I was with Judge Greenberg and Judge Alito, and it was all we could do to keep a straight face for 15 minutes. So I commend you for not making that argument. We're looking at a policy for judges. That's right, you all have to grow beards. Thank you.